IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**GABRIEL J. GAMBLE,** *et al.,*      )
                                       )
       Plaintiffs,            )
                                       )
    vs.                            )      2:16cv308
                                       )      **Electronic Filing**
                                       )
**DIRK MATS**, Human Services          )
Director, *et al.,*                    )
                                       )
       Defendants.            )

**MEMORANDUM OPINION**

Pending before the court in the above-captioned matter are a motion for service of the Amended Complaint (Doc. No. 12) and a motion for a hearing and appointment of counsel (Doc. No. 15) filed by plaintiff Cynthia A. Gamble. For the reasons that follow, these motions will be denied.

## I.    **INTRODUCTION**

This case was commenced on February 24, 2016, in the United States District Court for the Middle District of Pennsylvania by the filing of a complaint naming Gabriel J. Gamble (hereafter, "Gabriel") as the sole plaintiff and "The Department of Human Services," "Exella Health Hospital," and Torrance State Hospital as defendants.[1] (Doc. No. 1.) Gabriel was the only plaintiff identified in the complaint, but his signature on that pleading was entered by his

---

[1] Torrance State Hospital is a public psychiatric hospital focused on providing progressive treatment for persons who have serious mental illness, including those with a co-occurring disorder. Its treatment mission focuses on successfully discharging individuals from an intense hospital-based active treatment program staffed by licensed professionals to out-patient programs managed by county mental health professionals. See http://www.dhs.pa.gov/citizens/statehospitals/torrancestatehospital/ .

1

mother, Cynthia A. Gamble (hereafter, "Cynthia"), acting as "rep-payee P.O.A." (*Id.* at p. 6, ¶ V(A).) By order dated March 16, 2016, the Honorable Yvette Kane granted Gabriel's application to proceed *in forma pauperis* and transferred the case to this judicial district pursuant to 28 U.S.C. §1404(a). (Doc. No. 7.)

On October 27, 2016, an Amended Complaint (Doc. No. 6) was filed, designating Gabriel, Cynthia, and "Kathy Vanwhy" as plaintiffs. The Amended Complaint, which serves as the operative pleading in this case, designated a host of new defendants including "Human Services Director, Dirk Mats," "Excella Inpatient Mental Health," Torrance State Hospital, and some thirty other individuals. The Amended Complaint once again is signed by Cynthia on Gabriel's behalf as "rep-payee P.O.A." as well as in her own right. This pleading alleges, in part, that:

> After being admitted to Exella [sic] Hospital Gabriel was given a DMPS test[2] which caused an [sic] concussion and he needed to go on thyroid medicine which he didn't get right away and he begged for more food because this made him hungry all the time. This also caused an eye injury and from never receiving the proper eye glasses he is now nearsighted, crosseyed and has grayish blue eyes from being very toxic. They changed his meds every month for five years and denied him a gluten and diary [sic] free diet.

Amended Compl. at p. 11, ¶ III. It is alleged that the various named defendants covered up the foregoing misconduct and engaged in "abuse and neglect" of Gabriel.

## I. DISCUSSION

Cynthia now moves this court for service of the Amended Complaint on the thirty-three (33) named defendants. She also requests a hearing on the claims and seeks appointment of counsel.

A. Motion for Service

---

[2] This appears to be a test that measures heavy metal toxicity in the body.

2

The United States Court of Appeals for the Third Circuit has instructed the district courts to utilize a two-step analysis to determine whether to direct service of a complaint where the plaintiff seeks to proceed *in forma pauperis*. First, the court must determine whether the litigant is indigent within the meaning of 28 U.S.C. § 1915(a). Second, the court must determine whether the complaint is frivolous or malicious or otherwise fails to state a cognizable claim for relief. *Roman v. Jeffes*, 904 F.2d 192, 194 n.1 (3d Cir. 1990); *see* 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

In this case, Judge Kane granted Gabriel's *in forma pauperis* application prior to transferring the case to this court. However, Cynthia and "Kathy Vanwhy" – the newly added plaintiffs – have never applied for or been granted *in forma pauperis* status, nor have they paid the necessary filing fee for purposes of proceeding with this case. For this reason alone, the claims of Cynthia and Kathy Vanwhy are not properly before the court[3] and Cynthia's various motions must therefore be denied. *See Baxter v. Atl. Care Main Pomona Hosp.,* No. CIV. 13-7876 RBK JS, 2015 WL 715012, at *2 (D.N.J. Feb. 19, 2015) (finding, in dicta, that additional grounds existed to deny reopening of case where plaintiff had "never sought nor received *in*

---

[3] Moreover, it is not clear how Ms. Vanwhy has standing to pursue any of the grievances outlined in the Amended Complaint. Notably, the pleadings are devoid of any reference to her or her connection to the events in question. As far as this court can tell, Ms. Vanwhy's only connection to this litigation is that she witnessed Gabriel's execution of the power-of-attorney documents. *See* Exhibits in support of Application to Proceed in District Court without Prepaying Fees or Costs (Doc. No. 2-1) at pp. 8-9, 13, 16.

The court also notes that the Amended Complaint was signed only by Gabriel and Cynthia. In order for Ms. Vanwhy to proceed in this case, she would also have to sign the pleading, because Gabriel and Cynthia cannot litigate on her behalf. *See Murray v. Toal*, No. 14–1599, 2014 WL 4796426, at *2 (M.D. Pa. Sept. 26, 2014) ("[T]here is [a] ... well established common law rule that non-attorneys cannot litigate the rights of others.")(citation omitted); *Gary v. Albino*, No. 100886, 2010 WL 2546037, at *4 (D.N.J. June 21, 2010) ("Rule 11(a) of the Federal Rules of Civil Procedure requires each *pro se* plaintiff to sign every pleading, written motion, or other paper submitted to the Court with respect to his claims."). Because Ms. Vanwhy has not signed the Amended Complaint, paid the requisite filing fee, or applied for *in forma pauperis* status, her claims are not properly before the court.

3

*forma pauperis* status ... so as to permit the case to proceed for him under this specific civil action number"); *Edmonds v. Carteret Police Dept.,* No. 10–2304, 2010 WL 4929279, at *2 (D.N.J. Nov.30, 2010) ("Where multiple plaintiffs seek to proceed *in forma pauperis* ... all plaintiffs must establish their inability to pay the filing fee.").

To the extent Cynthia is moving for service of the Amended Complaint on Gabriel's behalf, she has no authority to do so. "It is well-settled that 'non-attorneys cannot litigate the rights of others.'" *Owens v. Credit Suisse Sec. (USA) LLC*, No. CV 15-1485, 2015 WL 6175441, at *2 (D.N.J. Oct. 20, 2015) (quoting *Baxter v. Atlantic Care Main Pomona Hosp.*, No. 13–7876, 2015 WL 715012, at *2 (D.N.J. Feb. 19, 2015)). This prohibition applies notwithstanding the fact that Cynthia is Gabriel's mother and is allegedly acting under a power-of- attorney. *See Williams v. United States,* 477 F. App'x. 9, 11 (3d Cir. 2012) (citations omitted) ("Faison Williams's power of attorney for her father may confer certain decision-making authority under state law, but it does not permit her to represent him *pro se* in federal court."); *Hoover v. Wells Fargo Bank, et al.,* Civ. A. No. 14-139, Doc. No. 2 (W.D. Pa. Jan. 30, 2014) (quoting same); *see also Osei-Afriyie ex rel Osei-Afriyie v. Med. Coll. of Pa.,* 937 F.2d 876, 882-83 (3d Cir. 1991) (holding that a non-attorney parent could not proceed *pro se* on behalf of his children in federal court). Thus, Cynthia's motion for service of the Amended Complaint must be denied on this basis as well.

B. Section 1915(e)(2)(B) Review

Given that Gabriel's *in forma pauperis* application was previously granted, the court must determine whether his claims are frivolous or malicious. *Roman,* 904 F.2d at 194 n.1. In *Neitzke v. Williams*, 490 U.S. 319 (1989), the Supreme Court identified two types of legally frivolous complaints: (1) those based upon indisputably meritless legal theory, and (2) those

4

with factual contentions which clearly are baseless. *Id*. at 327. An example of the first is where a defendant enjoys immunity from suit, and an example of the second is a claim describing a factual scenario which is fanciful or delusional. *Id.* In addition, Congress has expanded the scope of § 1915 to require that, before directing service of a complaint, courts evaluate whether the complaint states a claim upon which relief can be granted; if it does not, the action must be dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii).

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain: (1) a short and plain statement of the grounds for the court's jurisdiction, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for the relief sought. Fed. R. Civ. P. 8(a). To comply with Rule 8, a complaint must contain factual content that is sufficient to state a plausible claim for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Rieco v. Bronsburg*, No. 15-2010, 2017 WL 34469, at *3 (3d Cir. Jan. 4, 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

In contrast, setting forth averments that only offer "labels or conclusions or a formulaic recitation of the elements of a cause of action will not do," nor will advancing only factual allegations that are "merely consistent with a defendant's liability." *Iqbal*, 556 U.S. at 663 (internal quotation marks and citation omitted). Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. *Id.; see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n. 8 (2007) (A complaint states a claim where its factual averments sufficiently raise a "reasonably founded hope that the

5

[discovery] process will reveal relevant evidence to support the claim.") (internal quotation marks and citation omitted); *accord Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 1997)) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

In assessing whether a complaint states a viable claim for relief, the court accepts as true all well-pled factual allegations and all reasonable inferences that can be drawn therefrom, and views them in the light most favorable to the non-moving party. *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). In addition, *pro se* complaints must be construed liberally. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002).

Here, the court construes the *pro se* Amended Complaint liberally and assumes that Gabriel is attempting to state a claim under 42 U.S.C. §1983 for the alleged violation of his civil rights. The court further assumes that Gabriel might be attempting to assert claims for medical negligence and/or conspiracy.

In order to state a claim under 42 U.S.C. §1983, the plaintiff must allege facts that establish the violation of a federal statutory or constitutional right by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The liability of an individual defendant cannot be premised on principles of *respondeat superior*; instead, the plaintiff must establish the defendant's personal involvement in the alleged wrongdoing. *See Phelps v. Flowers*, 514 F.

App'x 100, 102 (3d Cir. 2013); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. New Jersey Dept. of Corrs.*, 806 F.3d 210, 222 (3d Cir. 2015).

To the extent the Amended Complaint alleges bodily harm to Gabriel at the hands of state actors, the Court construes the pleading as alleging a violation of Gabriel's right to substantive due process of law. Insofar as the Amended Complaint alleges that various individuals "covered up" wrongful conduct or sources of medical harm to Gabriel, the Court assumes that Gabriel is asserting a claim for conspiracy.

The Due Process Clause of the Fourteenth Amendment prohibits the states from depriving any person of life, liberty, or property, without due process of law. U.S. CONST. amend. XIV, §1. In order to state a substantive due process claim, a plaintiff must demonstrate that: (1) the particular interest at issue is protected by the substantive due process clause and (2) the government's deprivation of that protected interest shocks the conscience. *Lear v. Zanic*, 524 F. App'x 797, 801-802 (3d Cir. 2013). Only the most egregious official conduct can be considered "conscience shocking." *Newman v. Beard*, 617 F.3d 775, 782 (3d Cir. 2010). As a general matter, the due process clause does not impose an affirmative obligation on states to protect individuals from private sources of harm. *See DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 197 (1989). However, there are two exceptions to this rule: the first is the "special relationship" exception, which applies where the state takes a person into its custody and holds him there against his will[4]; the second is the "state-created danger" exception,

---

[4] When a state holds an individual in custody against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for the individual's safety and general well-being. *Morrow v. Balaski,* 719 F.3d 160, 167 (3d Cir. 2013) (citing *Estelle v. Gamble*, 429 U.S.

which imposes an affirmative duty on the part of the state to protect an individual if the state's own actions create the very danger that causes individual's injury.[5] *See Morrow v. Balaski*, 719 F.3d 160, 166–67 (3d Cir.2013).

In this case, the Amended Complaint summarily alleges, without any clarifying context, that Gabriel was "abused" and "neglected," that he was denied food and necessary medical attention, and that the harmful effects of a "D.P.M.S. test" were covered up or not properly investigated. An individual's right to bodily integrity is recognized as a fundamental right and liberty interest protected by substantive due process. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997); *Black by Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 709, n.1 (3d Cir. 1993). Thus, to the extent Gabriel is attempting to allege affirmative wrongdoing on the part of state actors which resulted in a violation of his bodily integrity, it is theoretically possible that he could demonstrate a substantive due process violation. Similarly, to the extent that Gabriel is

---

97, 103 (1976) (state required to provide adequate medical care to prisoners), and *Youngberg v. Romeo,* 457 U.S. 307, 324 (1982) (state required to ensure the reasonable safety of involuntarily committed mental patients)). This duty to protect does not arise from the state's knowledge of the individual's predicament or its expression of intent to help, but rather from the limits the state imposes on an individual's ability to act on his own behalf. *Id*. at 168.
  Custody is the key aspect of a "special relationship," meaning "full time severe and continuous state restriction of liberty." *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1371 (3d Cir.1992) (characterizing those so restrained as unable to provide for themselves, to seek outside help to meet their basic needs, or to leave). The custody must be both involuntary and comprehensive. *Torisky v. Schweiker*, 446 F.3d 438, 445 (3d Cir.2006) (explaining these concepts in the context of foster care placement).

[5] To prevail under a "state created danger" theory, a plaintiff must show that: (1) the harm ultimately caused was foreseeable and fairly direct, (2) a state actor acted with a degree of culpability that shocks the conscience, (3) a relationship between the state and the plaintiff existed such that the plaintiff was either a foreseeable victim of the defendant's acts or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the general public, and (4) a state actor affirmatively used his authority in a way that created a danger to the individual or that rendered the individual more vulnerable to danger than had the state not acted at all. *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006).

8

attempting to allege a violation of his bodily integrity at the hands of private individuals or nongovernmental entities, it is theoretically possible that Gabriel could demonstrate a substantive due process violation on the part of relevant state officials if he can demonstrate either a "special relationship" or "state created danger."

At present, however, Gabriel's pleading rests on mere conclusory allegations that a number of individuals abused and neglected him, deprived him of food, denied him necessary treatment, and/or covered up the results of his medical tests. Lacking from the Amended Complaint are factual, non-conclusory averments that plausibly demonstrate the personal involvement of each named defendant in the alleged wrongdoing. It is unclear, for example, what the original source of Gabriel's medical harm was, who specifically perpetrated it, and when. In addition, it is unclear whether the various named defendants are private actors or state actors. To the extent Gabriel's complaint is premised upon allegations of inaction by state actors, he has not pled facts to show there was an affirmative duty on the part of the named defendants to protect him from harm. Consequently the Amended Complaint, as currently pled, is insufficient to allege a viable substantive due process violation.

The Amended Complaint also fails to state a plausible claim for conspiracy. "In order to state a § 1983 conspiracy claim, a plaintiff must allege that persons acting under color of state law conspired to deprive him of a federally protected right." *Fallen, v. City of Newark*, No. CV 15-2286, 2017 WL 368500, at *5 (D.N.J. Jan. 24, 2017) (internal quotation marks and citation omitted). "The allegations of conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.'" *Id.* (quoting *Capogrosso v. Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009)). Similarly, claims for civil conspiracy under Pennsylvania law require "(1) a combination of two or more

persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage." *Phillips v. Selig*, 959 A.2d 420, 436 (Pa. Super. Ct. 2008). Here, the Amended Complaint offers only conclusory averments that various defendants attempted to "cover up" neglect, abuse, or the denial of medical treatment. No facts have been alleged that would permit a reasonable inference to be drawn that there was an agreement among specified individuals to deprive Gabriel of his federal rights or otherwise engage in unlawful conduct.

Similarly, to the extent Gabriel is attempting to assert a claim for medical malpractice under Pennsylvania law, such claim is insufficiently pled. Under Pennsylvania law, any complaint asserting professional negligence must be supported by a certificate of merit. *See* Pa. R. Civ. P. 1042.3 (requiring a person who brings a claim of medical malpractice or medical negligence to file an appropriate certificate of merit either within the complaint or within sixty (60) days after filing the complaint); *Peraza v. Helton,* No. 3:CV-12-1306, 2016 WL 6442254, at *7 (M.D. Pa. Nov. 1, 2016) (discussing and applying Rule 1042.3; dismissing plaintiff's complaint without prejudice because he had not submitted a proper Rule 1042.3 certificate of merit or otherwise indicated that he had retained an expert witness).

In sum, because the Amended Complaint lacks sufficient factual content to state a viable basis for relief, it must be dismissed. Service of the Amended Complaint would be improper and must be denied.

C. Motion for a Hearing and Appointment of Counsel

As noted, Cynthia has filed a motion for a hearing on her claims and for appointment of counsel. In civil cases, neither the Constitution nor any statute gives civil litigants the right to appointed counsel. *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). Nevertheless,

district courts have broad discretion to determine whether appointment of counsel is appropriate under 28 U.S.C. § 1915(e). *Montgomery v. Pinchack*, 294 F.3d 492, 498 (3d Cir. 2002) (citing *Tabron v. Grace,* 6 F.3d 147, 153 (3d Cir. 1993)). Under the law of this circuit, the district court must first assess "whether the claimant's case has some arguable merit in fact and law." *Montgomery*, 294 F.3d at 499 (citing *Tabron*, 6 F.3d at 155). If the applicant's claim has some merit, the Court considers additional factors, *to wit*:

(1) the plaintiff's ability to present his or her own case;

(2) the complexity of the legal issues;

(3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;

(4) the amount a case is likely to turn on credibility determinations;

(5) whether the case will require the testimony of expert witnesses;

(6) whether the plaintiff can attain and afford counsel on his own behalf.

*Parham*, 126 F.3d at 457-58 (citing *Tabron*, 6 F.3d at 155-56, 157 n.5).

As noted, Cynthia has neither submitted an application to proceed *in forma pauperis* in this matter nor paid the filing fee, so her "claims" are not properly before the court. In addition, the court cannot fully assess whether Gabriel's claims have colorable merit because the Amended Complaint lacks sufficient content to state a plausible claim for relief under federal or state law. Accordingly, the Amended Complaint must be dismissed, and Cynthia's motions for a hearing and for appointment of counsel must also be denied. An appropriate order follows.

<u>Date: August 22, 2017</u>

<u>s/David Stewart Cercone</u>
David Stewart Cercone
United States District Judge

cc: Cynthia A. Gamble &
Gabriel J. Gamble
c/o Cynthia A. Gamble
1765 Skyline Drive, Apt. 18
Pittsburgh, PA 15227

(*Via First Class U.S. Mail*)